**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ERNEST McWILLIAMS,

          **Plaintiff,**

  **v.**

RYAN SIMMONS; et al.,

          **Defendants.**

         **9:12-CV-0747**
         **(MAD/CFH)**

---

**APPEARANCES:**        **OF COUNSEL:**

**ERNEST McWILLIAMS**
Plaintiff, *pro se*
04-B-2545
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

**HON. ERIC T. SCHNEIDERMAN**    **DAVID L. COCHRAN, AAG**
**New York Attorney General**
Attorney for Defendants
The Capitol
Albany, New York 12224

**MAE A. D'AGOSTINO**
**United States District Judge**

## DECISION and ORDER

## I. INTRODUCTION

   Presently before the Court in this civil rights action is Plaintiff's motion for preliminary

injunctive relief.  *See* Dkt. No. 2.

## II. RELEVANT BACKGROUND

In his complaint, Plaintiff asserts claims arising out of his current confinement at Upstate Correctional Facility ("Upstate C.F.").  *See* Dkt. No. 1.[1]  Plaintiff alleges that excessive force was used against him on at least three occasions between November, 2011 and April, 2012, causing injuries for which proper medical care was denied.  *See id*. at 4-10.[2]  Seven corrections officers at Upstate C.F., Upstate C.F. Superintendent David Rock, and the Department of Corrections and Community Supervision ("DOCCS") Commissioner Brian Fischer are named as Defendants.  *See id.* at 1-2.  For a complete statement of Plaintiff's claims, and the factual allegations supporting them, reference is made to the complaint.

Upon review of the complaint and Plaintiff's application to proceed *in forma pauperis*, Plaintiff was granted leave to proceed *in forma pauperis* and the Clerk of the Court was directed to issue summonses for service of process on Defendants.  *See* Dkt. No. 7.  An answer to the complaint was filed on behalf of Defendants in October, 2012.  *See* Dkt. No. 40.[3]

---

[1] Plaintiff states that he was transferred to Upstate C.F. to serve a one year sentence of confinement in the Special Housing Unit ("SHU").  *See* Dkt. No. 38 at 2.  Plaintiff states that he now faces more than ten years SHU confinement as a result of disciplinary charges brought against him since his arrival at that facility.  *See id*.

[2] Plaintiff claims that these incidents were in retaliation for Plaintiff having filed grievances against the officers involved.  *See* Dkt. No. 1 at 4-10.

[3] The Mandatory Pretrial Discovery and Scheduling Order for this action was issued by Magistrate Judge Christian F. Hummel on October 15, 2012.  *See* Dkt. No. 41.  Plaintiff has filed a motion for leave to file an amended complaint, which is pending before Magistrate Judge Hummel. *See* Dkt. No. 35.

### III. MOTION FOR A PRELIMINARY INJUNCTION

**A.    Governing Legal Standard**

Preliminary injunctive relief "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"  *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit.  *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir. 2010) (citation omitted).  To prevail on a motion for preliminary injunctive relief, a plaintiff must demonstrate irreparable harm and either a substantial likelihood of success on the merits of the claim, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor.  *See id*. at 35; *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011) (citation omitted).  However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher.  *Id.; see Jolly v. Coughlin,* 76 F.3d 468, 473 (2d Cir. 1996) (citation omitted).  Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."  *Citigroup Global Mkts.*, 598 F.3d at 35 n.4 (internal quotation marks omitted).[4]

---

[4] Under the Prison Litigation Reform Act, preliminary injunctive relief in any civil action with respect to prison conditions must be narrowly drawn, extend no further than necessary to correct the harm, and be the least intrusive means necessary to correct that harm.  *See* 18 U.S.C. § 3626(a)(2).  In considering an application for prospective relief, the Court is required to give substantial weight to any adverse impact such relief may have on public safety or on the operation of the criminal justice system. *See* 18 U.S.C. § 3626(a)(1)(A).

B.      **Summary of Plaintiff's Motion**

Plaintiff seeks an order of this Court directing that he be transferred to a different facility.  *See* Dkt. No. 2 at 14, 20-21.  Pending that transfer, Plaintiff requests that his movement within Upstate C.F. be recorded on a hand-held camera.  *See id.*  In support of this motion, Plaintiff recounts the three incidents in which he claims that excessive force was used against him, and states that he "is at risk of losing life or limb. . . ."  *See id.* at 6.[5]  Plaintiff further states that he "suffers from fear of being shoved, pushed, and assaulted again anxiety and insomnia."  *See id.*  In addition to his concerns regarding his personal safety, Plaintiff makes numerous assertions in his motion regarding his dissatisfaction with the inmate grievance procedure at Upstate C.F., and claims that his mail has been "obstructed and confiscated" on several unspecified occasions, his personal property has been confiscated, and medical staff (not Defendants in this action) have denied him adequate care.  *See id.* at 6-7, 13-14.

C.      **Analysis**

1.      *Irreparable Harm*

"'A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'"  *Bisnews AFE (Thailand) Ltd. v. Aspen Research Group Ltd.*, 437 Fed. Appx. 57, 58 (2d Cir. 2011) (quoting *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)).  Speculative, remote or future injury is not the province of injunctive relief.  *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983).  Rather, a plaintiff seeking to satisfy the irreparable harm

---

[5]  These incidents occurred on November 6, 2011, February 18, 2012, and April 22, 2012.  *See* Dkt. No. 2 at 5.  As Plaintiff notes, "multiple disciplinary reports" were written against him with respect to the incident on April 22, 2012, and he was sentenced to six months SHU confinement.  *Id.* at 15; *see also* Dkt. No. 36-5 at 30.  Plaintiff was also disciplined after the February, 2012, and was sentenced to three months SHU confinement.  *See* Dkt. No. 36-5 at 29.

requirement, must demonstrate that "absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Bisnews AFE (Thailand)*, 437 Fed. Appx. at 58 (quoting *Faiveley*, 559 F.3d at 118).

Here, based upon the Court's review of Plaintiff's motion, and with due regard for his status as a *pro se* litigant, the Court finds that Plaintiff has not demonstrated irreparable harm. Plaintiff's allegations of past misconduct, even if true, are not sufficient to demonstrate irreparable harm from future misconduct. *See Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238, *2 (S.D.N.Y. June 27, 1994) ("Even if Plaintiff successfully shows that such beatings actually took place, which he has not, this Court may not . . . grant[] a preliminary injunction based solely on past, illegal conduct")). Plaintiff's belief that Defendants will likely use excessive force against him in the future and that he will suffer irreparable injury if same occurred, is purely speculative.[6] Indeed, Plaintiff does not even allege is his motion that one or more of Defendants threatened him with future harm. *See Ward v. LeClaire*, No. 9:07-CV-0026, 2007 WL 1532067, *2 (N.D.N.Y. May 24, 2007) (holding that a request for injunctive relief against threats of future harm and harassment by prison officials is too speculative to meet the irreparable harm requirement). While the Court does not condone misconduct of any kind, the extraordinary relief sought by Plaintiff is simply not available to remedy harms which are speculative in nature and which may likely be remedied by an award of monetary damages. *See Slacks*

---

[6] This conclusion is not altered by Plaintiff's claim that Defendant Bilow used excessive force against him on October 11, 2012, when he responded along with several other officers to an altercation between Plaintiff and his cell mate. *See* Dkt. No. 44 at 4-6.

*v. Gray*, No. 9:07-CV-0501(NAM/GJD), 2008 WL 2522075, *1 (N.D.N.Y. June 25, 2008) (holding that allegations of future injury, without more, do not establish a real threat of injury).[7]

Accordingly, the Court finds that Plaintiff has not made the required showing of irreparable harm and therefore denies his motion for preliminary injunctive relief.

### 2. *Likelihood of Success on the Merits*

The Court finds that Plaintiff's motion must also be denied because he has not made a clear showing of a substantial likelihood of success on the merits of his claims or that extreme or very serious damage will result from a denial of the preliminary relief requested. Claims, such as those made here, of excessive force in violation of the Eighth Amendment, have two components – "one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citation omitted). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citation omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

At the outset, the Court finds that there is no basis in the present record upon which this Court may grant Plaintiff's request that he be transferred away from Upstate C.F. As Defendants note, *see* Dkt. No. 32 at 6, Plaintiff's desire to be confined in a different correctional facility, no matter how sincere, is not sufficient to warrant the requested judicial relief. It is DOCCS, not this Court, which determines where Plaintiff will be housed during his period of incarceration. *See Meachum v. Fano*,

---

[7] Plaintiff's other claims regarding other conditions of his confinement (*e.g.*, claims that his mail has been mishandled, that his property has been confiscated, and grievances have not been properly investigated and addressed), do not afford any basis for the issuance of injunctive relief.

427 U.S. 215, 229 (1976) ("The federal courts do not sit to supervise state prisons, the administration of which is [of] acute interest to the States"); *Olim v. Wakinekoma*, 461 U.S. 238, 248-49 (1983) (holding that inmates have no right to be confined in a particular state or particular prison within a given state); *Montayne v. Haymes*, 427 U.S. 236, 243 (1976) (holding that New York state prisoners have no right to incarceration at a particular prison facility). It is well-established that DOCCS has "broad leeway in deciding where to house the inmates under its protective care, be it state or county jail." *McFadden v. Solfaro*, Nos. 95 Civ. 1148, 95 Civ. 3790, 1998 WL 199923, *10 (S.D.N.Y. Apr. 23, 1998).

The Court has also considered whether Plaintiff has made a showing in support of his motion sufficient to warrant his request for "hand-held camera escort when moving throughout [the] facility," *see* Dkt. No. 2 at 20, and concludes that he has not.

The Court has reviewed Plaintiff's motion and the numerous documents Plaintiff has submitted in support of his claims. *See* Dkt. Nos. 1, 2, 36. These submissions include statements from two inmates housed in nearby cells, who state that they heard a physical altercation in Plaintiff's cell on April 22, 2012, and then heard Sgt. Baker say "stop that's enough."' *See* Dkt. No. 1-1 at 3-6. Inmates Williams and Ashby also state that they observed Plaintiff being escorted from his cell afterwards looking "disheveled." *See id.* at 3, 6. Both inmates observed an abrasion on Plaintiff's forehead which was bleeding, that his wrists were bleeding, and that he had a "big white mark" on the back of his shirt. *See id.* at 3-6. The Court also reviewed the statement submitted by inmate John White, who identified himself as Plaintiff's cellmate on April 22, 2012, and who stated that he observed the incident from the

7

recreation pen at the back of their cell.  *See* Dkt. No. 1-1 at 1-2.[8]  Inmate White states that he saw

several officers assault Plaintiff, and that Plaintiff was "bleeding from his face, neck, wrist, mouth,

nose and head" when he was "taken out of the cell to be examined by nurse."  *See id*. at 1.

The record also includes the use of force and other reports prepared by staff in connection with

these incidents, the inmate misbehavior reports issued to Plaintiff on these dates, records showing the

disposition of these charges and the sanctions imposed, and excerpts from Plaintiff's medical records

during the relevant periods.  *See* Dkt. No. 36.  Upon review, the Court finds that these records do not

provide evidentiary support for, and indeed contradict, Plaintiff's claims that the force used by

Defendants was "excessive" for purposes of his Eighth Amendment claim.[9]

On the basis of the present record, the Court is unable to conclude that Plaintiff has made the

showing required for the issuance of mandatory injunctive relief and denies his motion for this reason

as well.

### IV. CONCLUSION

**WHEREFORE**, the Court hereby

**ORDERS** that Plaintiff's motion for preliminary injunctive relief (Dkt. No. 2) is **DENIED**; and

the Court further

---

[8] The probative value of this statement is not clear as inmate White subsequently advised that he had been interviewed by a representative of the Inspector General's Office regarding the incident, and that he intended to recant the statement he had made to that Office.  *See* Dkt. No. 6.

[9] Plaintiff also submitted a copy of the May 1, 2012 letter addressed to Plaintiff from the New York State Commission of Corrections, advising Plaintiff that the claims raised in his letter dated April 22, 2012 had been investigated and "found to be unsubstantiated."  *See* Dkt. No. 36-4 at 42.

**ORDERS** that the Clerk of the Court shall serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED**.

Dated: February 6, 2013
        Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

9