**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

———————————————————————

ERNEST McWILLIAMS,

                          Plaintiff,

        v.                                                    No. 12-CV-747
                                                                 (MAD/CFH)

RYAN SIMMONS, Corrections Officer, Upstate
Correctional Facility; NATHAN LIPKA, Corrections
Officer, Upstate Correctional Facility; R. BILOW,
Corrections Officer, Upstate Correctional Facility;
BRADLEY CARR, Corrections Officer, Upstate
Correctional Facility; K. ELSWORTH, Corrections
Officer, Upstate Correctional Facility; PATRICIA
WILLIAMS, Corrections Officer, Upstate Correctional
Facility; ERIC MARSHALL, Corrections Officer,
Upstate Correctional Facility; DAVID ROCK,
Superintendent, Upstate Correctional Facility;
BRIAN FISCHER, Commissioner of DOCCS;
R.N. D. MAAS; R.N. M. TRAVERS; R.N. LELAND
MARLOW; D. UHLER, Deputy Superintendent
of Security,

                          Defendants.[1]

———————————————————————

**APPEARANCES:**                          **OF COUNSEL:**

ERNEST McWILLIAMS
Plaintiff Pro Se
04-B-2545
Upstate Correctional Facility
Post Box 2001
Malone, New York 12953


HON. ERIC T. SCHNEIDERMAN                KEVIN M. HAYDEN, ESQ.
Attorney General for the                Assistant Attorney General
   State of New York
———————————————

        [1]  In his acknowledgment of receipt of summons and complaint, defendant
"Elsworth" spelled his name as "Ellsworth."  Dkt. No. 14.  The Court notes the discrepancy
as mere error on McWilliams's part and proceeds with the latter spelling in this Report-
Recommendation.

Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

Plaintiff <u>pro se</u> Ernest McWilliams ("McWilliams"), an inmate currently in the custody of

the New York State Department of Correctional and Community Supervision ("DOCCS"),

brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, thirteen DOCCS

employees, violated his constitutional rights under the First, Eighth, and Fourteenth

Amendments. Am. Compl. (Dkt. No. 57). McWilliams also raises pendent state law claims.

<u>Id.</u> Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ.

P. 56. Dkt. No. 99. McWilliams opposes. Dkt. No. 101. For the following reasons, it is

recommended that defendants' motion be granted.


### I. Background[3]

The facts are related herein in the light most favorable to McWilliams as the non-

moving party. <u>See</u> subsection II(A) <u>infra</u>. At all relevant times, McWilliams was an inmate

at the Upstate Correctional Facility ("Upstate").

---

[2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[3] Throughout the course of this litigation, McWilliams has filed multiple exhibits on multiple dates. <u>See</u> Dkt. Nos. 1-1, 51, 93, 96. Although the exhibits were not filed with McWilliams's response to the instant motion, due to the governing law affording special solicitude to <u>pro se</u> litigants, the Court considers those exhibits in making the recommendations contained herein.

**A. November 8, 2011**

McWilliams arrived at Upstate on October 27, 2011. Am. Compl. at 8. On November 6, 2011, defendants and Corrections Officers Ellsworth and Lipka conducted a search of McWilliams's cell. Id. While being escorted out of his cell, McWilliams was tripped and punched in the lower back.[4] Id. McWilliams returned to his cell, finding only his mattress had remained. Id. at 8–9. McWilliams alleged that he had filed grievances on the officers involved and requested dismissal of the misbehavior reports; however, such reports are not contained in the record. Id. McWilliams alleged that all misbehavior reports were dismissed and all property was returned. Id. On November 8, 2011, Travers completed an injury report and noted bruises on McWilliams's lower back. Id. at 26. However, Travers denied McWilliams's requests to see a doctor for X-rays.[5] Id.

McWilliams and his family had filed complaints to Rock and Fischer but all were denied. Am. Compl. at 7, 13. McWilliams alleged that he had spoken to Rock during weekly rounds on multiple occasions and complained to him about being assaulted, harassed, and retaliated against by the staff. Id. at 12. Rock replied that McWilliams should follow the grievance procedure such as filing a grievance.[6] Id.

---

[4] Non-party Corrections Officer MacWilliams indicated in an internal memorandum that he searched McWilliams's cell on November 6, 2011 and left authorized items in the cell. Dkt. No. 93-3 at 45. MacWilliams denied tripping McWilliams. Id.

[5] "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). Accordingly, any attempts on McWilliams's part to allege an Eighth Amendment medical indifference claim against Travers for denying an examination by a physician for bruises must fail.

[6] The DOCCS "IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution

Defendant Corrections Officer Lipka wrote in an internal memorandum that certain property was removed from McWilliams's cell as a result of misbehavior reports and deprivation orders.  Dkt. No. 93-3 at 46.  According to that memorandum and decisions of the superintendent and Central Office Review Committee ("CORC"), Lipka had confiscated fishing poles from McWilliams.  Dkt. No. 51 at 14, 31, 93-3 at 4, 46.[7]

---

Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response; and (3) appeal to the CORC [Central Office Review Committee] . . . within four working days of receipt of the superintendent's written response."  Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004) (internal citations omitted).

[7]  To the extent that McWilliams was attempting to state a claim based on the alleged unauthorized cell search, such a claim should fail.  While "[i]nmates . . . do not [have a] constitutional right to be free from cell searches of any kind, including retaliatory cell searches," they can assert a retaliation claim for the retaliatory conduct in connection with a cell search.  See Rodriguez v. McClenning, 399 F. Supp. 2d 228, 239–40 (S.D.N.Y. 2005).

To state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that:  (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action.  Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted); Tafari v. McCarthy, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010).  "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives."  Barclay v. New York, 477 F. Supp. 2d 546, 588 (N.D.N.Y. 2007) (citations omitted).

Courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration.  Jackson, 549 F. Supp. 2d at 214–15.  Therefore, conclusory allegations alone are insufficient.  Id. at 214 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).  If the plaintiff establishes these elements, the burden shifts to the defendants to show by a preponderance of the evidence that they would have taken the same action against the plaintiff absent his exercising of the protected conduct.  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

Here, McWilliams has failed to establish an issue of material fact in his retaliation claim against defendants Ellsworth and Lipka.  McWilliams has satisfied the first prong because the filing of lawsuits and grievances is a constitutionally protected activity.  See Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996); Mateo v. Fischer, 682 F. Supp. 2d

4

## B.  February 18, 2012

On February 18, 2012, officers used excessive force against McWilliams while he was in mechanical restraints.  Am. Compl. at 13.  McWilliams alleged that he sustained an injury to his left eye.  Id. at 26.  McWilliams further alleged that defendant Nurse Marlow attempted to cover up the assault by tampering with his medical records.  Id. at 27.  McWilliams alleged that Rock has knowledge of these incidents because McWilliams filed

---

423, 434 (S.D.N.Y. 2010).  While the filing of grievances is protected conduct, the cell search does not establish adverse action.  A plaintiff may be

> suggesting that these searches were unusually punitive and so were out of the ordinary[.  However,] plaintiff alleges no facts tending to show that, in an ordinary random cell search, property is not seized and cells are not turned upside down and inside out.  It is to be expected that cell searches will disrupt, not only the prisoner's life, but also the living conditions inside the cell; and since one purpose of a cell search is to locate and recover contraband, the court cannot turn a blind eye to the fact that prisoner property is sometimes seized when cells are searched.

Jones v. Harris, 665 F. Supp. 2d 384, 398 (S.D.N.Y. 2009).  Moreover, McWilliams cites the seizure of property as a consequence or several deprivation orders issued against him due to prison rule violations and he does challenge those orders or charges.  Am. Compl. at 8; See Dkt. Nos. 93-4 at 8–11, 51 at 11 (CORC decision indicating McWilliams was issued a deprivation order on November 6, 2011 for state shirts, sheets, exercise, and paper due to his behavior, noting the state blanket was confiscated because it was ripped, and explaining a copy of the orders or misbehavior report was not issued because McWilliams was on a paper deprivation order).

As for the third prong, McWilliams does not allege that he had filed a grievance against Ellsworth or Lipka prior to November 6, 2011.  McWilliams alleged that he filed grievances against two nurses and two officers.  Am. Compl. at 8.  The record shows that on November 6, 2011, McWilliams had filed a grievance but it was against a non-party officer.  Dkt. No. 93-3 at 36.  McWilliams does not allege or substantiate how Ellsworth or Lipka had knowledge of his complaints against the unidentified individuals.  Indeed, McWilliams makes no factual assertions constituting causal evidence that ties a constitutionally protected activity to an adverse action taken against him.  Therefore, McWilliams cannot establish a potential First Amendment retaliation claim against either Ellworth or Lipka.

grievances concerning them and Fischer gained knowledge through phone calls and written complaints made by McWilliams's family members. Id. at 13.

Non-party Corrections Officers MacWilliams and Patterson indicated in internal memoranda that they were escorting McWilliams to his cell when McWilliams became verbally abusive and started yelling at other inmates. Dkt. No. 93-3 at 49–50. MacWilliams ordered McWilliams to stop yelling and indicated that no force was used. Id.

Non-party Lieutenant Spinner interviewed McWilliams, who indicated that on February 18, 2012, Patterson, MacWilliams, and non-party Sergeant Debyah were escorting him and he began chanting to get the attention of all the inmates. Dkt. No. 93-3 at 51. MacWilliams told him to "shut up" and shoved him into the wall while holding his left arm and Patterson shoved him into the wall while holding his right arm and he struck his face on the wall, injuring his left eye. Id. Spinner brought McWilliams to see Nurse Marlow, who filled out an injury report noting no injuries, redness, or swelling to the left eye. Id.

## C.  April 22, 2012

On April 22, 2012, McWilliams was sharing a cell with non-party Inmate White. Am. Compl. at 13. On that day, defendants and Corrections Officers Lipka and Marshall were escorting McWilliams to his cell. Id. at 7, 13; McWilliams Dep. (Dkt. No. 99-27) at 13.[8] Lipka took off the waist chains around McWilliams. Am. Compl. at 14. McWilliams complied with orders to place his bring his hands down, turn around, walk into the cell, and leave his back to the door until it closed. Id. While the door was closing, Marshall pushed

---

[8]  The page numbers following "McWilliams Dep." refer to the pagination of the header numbers generated by CM/ECF, not the individual transcripts.

McWilliams into the cell.  Id. at 14; see McWilliams Dep. at 13.  Lipka entered the cell and

joined Marshall in assaulting McWilliams.  Am. Compl. at 14.  Lipka and Marshall punched

McWilliams in the head, face, and body.  Id.  McWilliams was thrown onto the shower floor

and punched and kicked.  Id. at 14–15.

While Lipka and Marshall assaulted McWilliams, Carr and Simmons entered the cell

and punched and kicked McWilliams.  Am. Compl. at 15.  Carr punched and kicked

McWilliams and twisted McWilliams's handcuffs, which caused McWilliams pain.  Id.

McWilliams alleges that Carr, Lipka, Marshall, and Simmons assaulted him because of his

filing of grievances against them and other officers.  Id. at 16.

After Carr exited the cell, Bilow and Williams arrived and witnessed the assault.  Am.

Compl. at 17.  Bilow and Williams did not intervene to stop the assault and exited the cell as

if it did not occur.[9]  Id.  McWilliams alleges that Bilow and Williams authored false reports

stating that when they arrived at the cell, the situation was under control.  Id.  McWilliams

alleges that Simmons had authored a false use of force report in which Simmons indicated

that he had entered the cell, observed the situation was under control, then stepped out of

the cell.  Id. at 16.  McWilliams alleges that Marshall authored a false misbehavior report.

Id. at 19.  By letter dated April 22, 2012, McWilliams complained to Rock of the assault

incident.  Dkt. No. 51 at 79.

White and non-party Inmates Ashby and Williams attested to a similar set of facts

corroborating McWilliams's account of the incident.  White Aff. (Dkt. No. 1-1 at 1–2); Ashby

---

[9]  McWilliams alleges that a video recording had captured Bilow's and Williams's
actions.  Am. Compl. at 17.  However, no such video exists as part of the record before
the Court.

Aff. (Dkt. No. 1-1 at 5–6); Williams Aff. (Dkt. No. 1-1 at 3–4). Ashby and Williams saw McWilliams complying with Marshall's orders but Marshall suddenly shoved McWilliams into the cell and Carr, Lipka, Marshall, and Simmons, entered the cell. Ashby Aff. at 5; Williams Aff. at 3. White saw Carr, Lipka, Marshall, and Simmons kicking and punching McWilliams throughout the body prior to falling in the shower. White Aff. at 1–2. McWilliams bled from the face, neck, wrist, mouth, nose, and head. Id.; Ashby Aff. at 5; Williams Aff. at 4. Baker arrived and ordered the officers to stop, and McWilliams was taken out and examined by a nurse. White Aff. at 1–2. Lipka and Marshall left the cell and Baker and Carr took McWilliams and left the cell. Williams Aff. at 3.

After the assault, McWilliams was taken to a holding pen and defendant Nurse Maas completed an injury report. Am. Compl. at 20. Despite his complaints of physical pain, Maas denied McWilliams's requests for medical treatment. Id. at 20–21. Maas told McWilliams to use soap and water and submit a sick call request if he required medical attention. Id. at 21.

McWilliams told Baker during a daily round that he required emergency medical attention and Baker said he would notify medical staff. Am. Compl. at 21. Maas arrived and McWilliams sought medical treatment such as an X-ray being taken and pain medication but Maas denied all medical treatment. Id. at 22. As a result of the assault, McWilliams experienced headaches, pains in the ribs and back, and emotional distress. Id. at 23–24.

On April 23, 2012, McWilliams was seen at sick call by defendant Nurse Marlow and requested stronger pain medication and a physician's exam. Am. Compl. at 25. Marlow examined McWilliams's injuries and McWilliams told Marlow that officers had assaulted

him.  Id.  Marlow said, "you don't need to see a doctor you, be alright" and walked away.  Id.

On April 24, 2012, McWilliams stood at his cell door for sick call but Travers walked pass

his cell.  Id.


### D.  Tier III Disciplinary Hearing

On April 22, 2012, McWilliams was issued a misbehavior report for attempted assault,

interference, violent conduct, direct order, and lock in-lock out procedures.  Am. Compl. at

28.  McWilliams was charged clenching his hands together in an aggressive manner

towards an escorting officer.  Dkt. No. 99-29 at 4.  McWilliams received inmate assistance

on April 25, 2012.  Tier III Hearing (Dkt. No. 99-29) at 2.

On May 8, 2012, Uhler commenced the Tier III disciplinary hearing.  Am. Compl. at 28.

McWilliams asserts that Uhler was biased and denied him the opportunity to present a

defense.  Id.; McWilliams Dep. at 22–23.  McWilliams asserts that Uhler never sent him the

hearing disposition.  Am. Compl. at 31.  However, McWilliams received a document alerting

him he was found guilty of the charges.  Id.  McWilliams alleges that Uhler had removed

him from the disciplinary hearing without cause.  Id. at 27; McWilliams Dep. at 22–23.

The disciplinary hearing transcript shows that at the inception of the hearing,

McWilliams had asked for the use of force report, to which Uhler replied McWilliams would

receive a copy that day.  Tier III Hearing at 6.  Uhler adjourned the hearing for to allow

McWilliams time to review the documents.  Id.  The hearing reconvened on June 7, 2012

with a review of a video tape of the incident.  Id. at 8.  Uhler and McWilliams disputed what

the video tape contained.  Id.  At various points, Uhler accused McWilliams of being

argumentative, intimidating officers, and warned that McWilliams would be removed from

the hearing if the behavior continued. Id. at 16–17, 27–28. Uhler adjourned the hearing for Marshall and White to testify. Id. at 19–21.

The hearing reconvened on June 18, 2012. Tier III Hearing at 21. Carr testified that he escorted McWilliams as soon as the sergeant arrived at the scene. Id. at 23. When Carr arrived, McWilliams was already on the floor in his cell. Id. at 24. McWilliams was on his feet when he was being escorted out and Carr denied twisting the handcuffs into McWilliams's skin. Id. at 26. Uhler noted that the incident report noted red marks on McWilliams's wrists but the use of force report indicated that McWilliams was still handcuffed and the red marks could have been a result of the first use of force incident. Id. at 27. Ellsworth testified that he responded to a radio broadcast of the use of force situation and when he arrived he saw the situation was under control. Id. at 30. White testified to the same set of facts as his affidavit. Id. at 36–63. White was removed from the hearing for being disruptive and providing testimony that contradicted McWilliams's testimony. Id. at 63. Lipka, Marshall, and Williams also testified. Tier III Hearing at 67, 90, 104. Uhler denied the testimonies of two inmates and a nurse because they did not directly witness the incident. Id. at 105. Uhler provided a statement of reasons for finding McWilliams guilty of all counts. Id. at 105–06.

### E. Medical Care

Defendants have a different account of the medical care provided to McWilliams for the injuries claimed to have occurred on November 8, 2011, February 18, 2012, and April 22, 2012. Non-party Nurse Administrator Smith reviewed the medical records and attested that McWilliams's subjective complaints of those injuries, together with minor injuries he claimed

to have sustained, did not amount to serious injuries requiring further care.  Smith Aff. (Dkt. No. 99-17) ¶¶ 1, 6.

With respect to the first incident, medical records show that on November 8, 2011, McWilliams had three dime size bruises on the back and no treatment was deemed necessary.  Dkt. No. 99-18 at 1.  Between November 8, 2011 and November 20, 2011, McWilliams was examined eight times by medical personnel for lower back pain, headaches, and cold-related symptoms.  Id. at 1–6.  McWilliams was observed to have a steady gait, a lack of apparent distress or difficulty in bending and moving, and no difficulty in bearing weight.  Id.  McWilliams was issued Ibuprofen to treat his pain.  Id.  In Smith's opinion, McWilliams did not sustain a serious injury on or about November 8, 2011 and no further treatment was required.  Smith Aff. ¶ 20.

McWilliams's ambulatory health record ("AHR") shows that between February 18, 2012 and February 29, 2012, McWilliams was examined nine times by medical personnel for lower back pain and aches and pains.  Dkt. No. 99-19 at 2–7.  McWilliams mentioned pain in the left eye for the first time on February 22, 2012 but presented no evidence of injuries, swelling, bruising, or redness of the left eye.  Id. at 3.  On February 24, 2012, McWilliams was examined and found to have "some swelling beneath left eye," with no evidence of redness, blurry vision, or headache, was issued Ibuprofen, and instructed to use a compress for the swelling beneath eye.  Dkt. No. 99-17 at 4–5.  On February 26, 2012, McWilliams complained of eye swelling but was noted to be alert and oriented, had clear vision, was able to move his eyes without difficulty, and was issued Ibuprofen.  Dkt. No. 99-19 at 5.  On February 27, 2012, McWilliams was examined, complained of swelling of left eye, had some swelling and was issued Ibuprofen.  Id.  On March 1, 2012, McWilliams was

examined during sick call and complained of facial pain but was noted to be alert and oriented with steady gait, no evidence of swelling, issued Tylenol and educated on how to use a cool compress. Id. at 7.

With respect to the April 22, 2012 injuries, an inmate injury report dated April 22, 2012 indicates that McWilliams reported "a lot of injuries," was diagnosed with suffering a superficial dime size abrasion on the right side of forehead, superficial abrasions on the left side of chest, superficial abrasion of the left wrist and red marks on both wrists, complained of cuts inside the mouth and lower back pain but none of this was visualized, and was advised to clean abrasions with soap and water. Dkt. No. 99-20 at 1; id at 4 (AHR notes indicating substantially the same). McWilliams was examined again that day, advised that his injuries did not require emergency care, and he would be seen by a nurse in the morning. Id. at 4.

On April 23, 2012, McWilliams complained of neck and wrist pain without evidence of swelling, was noted to have a full range of motion in his neck, and was advised to take Ibuprofen. Dkt. No. 99-20 at 5. On April 26, 2012, McWilliams was examined during sick call and complained of a stiff neck and sore hands but he was alert and oriented, in no apparent distress, stood erect with no grimaces, spoke clearly to nurse, advised to continue taking Ibuprofen, and had intact skin integrity. Id. at 6. On April 27, 2012, McWilliams complained of blood on his wrists but there was no evidence of bleeding or break in the skin integrity and was not provided with further treatment as there were no new injuries. Id. at 6. On April 28, 2012, McWilliams complained of "scabs all over his body" but refused an evaluation. Id. at 7. The AHR notes indicate that McWilliams was frequently examined during sick call throughout May, 2012 during which time he often requested stronger pain

medication and was found in no apparent distress.  Id. at 7–8, 10–12, 14–15.

## F. Exhaustion

In his amended complaint, McWilliams indicated that there is a prisoner grievance procedure at Upstate but he did not file grievances for the allegations contained in the amended complaint because he had "a constitutional right under Nussle v. Willette[,] which required no grievance exhaustion upon assault or retaliation."  Am. Compl. at 2, 6. McWilliams indicated that he notified the superintendent of the events on April 24, 2012.  Id. at 6.  McWilliams later testified that he did not file grievances for the allegations contained in the amended complaint because he "felt that [his] situation warranted immediate constitutional intervention."  McWilliams Dep. at 10–11.  McWilliams further testified that he filed a grievance within two months of November 6, 2013 in connection to the April 22, 2012 use of force incident.  Id. at 11–12.

Non-party Woodward, the IGP supervisor at Upstate, attested that McWilliams had filed approximately forty-three grievances in 2011 and 2012.  Woodward Aff. (Dkt. No. 99-22) ¶¶ 1, 4, 6; Dkt. No. 99-23.  Woodward attested that McWilliams did not file any grievances relating to:  (1) Traver's alleged failure to provide adequate medical care on November 8, 2011; (2) Marlow's alleged failure to provide adequate medical care in relation to the February 18, 2012 incident; (3) any use of force incident on April 22, 2012; (4) the failure to provide adequate medical care with respect to the April 22, 2012 incident; (5) Lipka or Marshall retaliating against him on April 22, 2012; (6) Bilow or Williams exhibiting deliberate indifference toward him; (7) Bilow, Carr, Ellsworth, Lipka, Marshall, Simmons, or Williams writing false misbehavior reports to cover up the alleged April 22, 2012 use of force

13

incident; (8) Fischer or Rock exhibiting deliberate indifference towards McWilliams's constitutional rights; or (9) Uhler violating McWilliams's due process rights. Woodward Aff. ¶¶ 7–16; Dkt. No. 99-23.

Non-party Hale, assistant director of the IGP, attested that, McWilliams had submitted twenty-four appeals to CORC in 2011 and 2012. Hale Decl. ¶¶ 1, 6–7; Dkt. No. 99-25. McWilliams never filed appeals relating to: (1) Traver's failure to provide adequate medical care on November 8, 2011; (2) the February 18 or April 22, 2012 use of force or denial of medical care incidents; (3) Lipka or Marshall retaliating against him on April 22, 2012 incident; (4) claims that Bilow or Williams were deliberately indifferent toward him; (5) Bilow, Carr, Ellsworth, Lipka, Marshall, Simmons, or Williams writing false misbehavior reports in relation to the April 22, 2012 incident; (6) Fischer and Rock were deliberately indifferent towards his constitutional rights; or (7) Uhler violating his due process rights. Hale Decl. ¶¶ 8–16; Dkt. No. 99-25.

## II. Discussion

McWilliams contends that on April 22, 2012: (1) defendants Lipka and Marshall violated his First and Fourteenth Amendment rights and committed "the tort of intentional infliction of emotional harm" when they authored false reports and testified falsely against him in retaliation for his filing of grievances against them; (2) defendants Carr, Lipka, Marshall, and Simmons violated his Eighth Amendment rights when they used excessive force against him; (3) defendants Bilow and Williams violated his Eighth Amendment rights when they failed to intervene on his behalf; (4) defendant Fischer violated his Eighth Amendment rights by exhibiting deliberate indifference in failing to act despite numerous

14

complaints reported by McWilliams and his family members; (5) defendant Rock violated his Eighth Amendment rights by exhibiting deliberate indifference in not properly investigating his complaints; (6) defendants Maas, Marlow, and Travers violated his Eighth Amendment rights by exhibiting deliberate indifference to McWilliams's medical needs; and (7) defendant Uhler violated his Fourteenth Amendment due process rights in conducting a disciplinary hearing. Am. Compl. at 35–47. McWilliams also contends that defendants conspired against him to cover up the April 22, 2012 incident. Id. at 18. Although McWilliams did not re-enumerate the allegations concerning the November 8, 2011 and February 18, 2011 incidents as causes of action, in affording special solicitude to the pro se litigant, the Court considers any claims that may have arisen from those dates.

Defendants argue that McWilliams's entire complaint should be dismissed based on his failure to exhaust. Defendants alternatively argue that certain claims should be dismissed as a matter of law.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the

non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial.  The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . .  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion;

the requirement is that there be no genuine issue of material fact.  <u>Anderson</u>, 477 U.S. at 247–48.

## B. Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases.  <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002); <u>see</u> <u>also</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 83 (2006).  This exhaustion requirement applies to all prison condition claims.  <u>Porter</u>, 534 U.S. at 532.  "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement." <u>Jenkins v. Haubert</u>, 179 F.3d 19, 28 (2d Cir. 1999).  The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate.  <u>Porter</u>, 534 U.S. at 524.

Exhaustion for an inmate in DOCCS custody is generally achieved through IGP.  <u>See</u> N.Y. COMP. CODES R. & REGS. tit. 7, § 701.1, <u>et</u> <u>seq.</u>  Allegations of staff harassment are subject to an expedited procedure whereupon the complaint is first reviewed by the superintendent and only if it is not a bona fide claim will it be returned to the IGP for normal processing.  N.Y. COMP. CODES. R & REGS. tit. 7, § 701.8.  Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit.  <u>Torres v. Carry</u>, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009); <u>see</u> <u>also</u> N.Y. COMP. CODES R. & REGS. tit. 7 § 701.5(d)(2)(ii) ("The CORC shall review each appeal, render a decision on the grievance, and transmit its decision . . . within 30 calendar days").  Disagreement with the

superintendent's decision in the expedited review also requires an appeal to CORC.  N.Y. COMP. CODES. R & REGS. tit. 7, § 701.8 (g)–(h); see also Espinal v. Goord, 588 F.3d 119, 125 (2d Cir. 2009) (explaining IGP and the expedited procedure for harassment claims and its appeal mechanism through CORC).  Exhaustion must precede filing a lawsuit.  Burgos v. Craig, 307 F. App'x 469, 470 (2d Cir. 2008) ("[Exhaustion] must be completed before suit is filed, and completing the exhaustion requirements only after filing suit is insufficient.") (citing Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001) ("Subsequent exhaustion after suit is filed therefore is insufficient."), abrogated in part on other grounds by Porter, 534 U.S. 516) (attached to this Report-Recommendation).

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply."  Ruggiero v. Cnty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)).  The failure to exhaust may be excused in limited circumstances.

> In determining whether such an exception is applicable, a district court must apply a three-part test: First, the court must determine whether administrative remedies in fact were available to the prisoner.  Second, if such remedies were available, the court must determine whether the defendants' own actions inhibited the inmate's exhaustion of administrative remedies, thereby requiring that one or more of them be equitably estopped from raising the failure to exhaust as a defense.  Finally, if administrative remedies were available and the defendants are not estopped, the court must determine whether any special circumstances justify the prisoner's failure to comply with administrative procedural requirements.

Gayle v. Benware, 716 F. Supp. 2d 293, 298 (S.D.N.Y. 2010) (internal citations omitted); see generally Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) (articulating above test as the appropriate method for excusing failure to exhaust given the present state of all

Second Circuit opinions). "Unavailability of administrative remedies . . . is an objective [test]: that is, would a similarly situated individual of ordinary firmness have deemed them unavailable." Kasiem v. Switz, 756 F. Supp. 2d 570, 576–77 (S.D.N.Y. 2010) (internal quotation marks and citations omitted). Estoppel occurs when "an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible . . . [as evidenced by] prison officials' threats, beatings, . . . denials of grievance forms, or by other misconduct deterring [the inmate] from fulfilling the requisite procedure." Id. at 577 (internal quotation marks and citations omitted). If an inmate claims estoppel and continues to file complaints and grievances, the exception is inapplicable. Id. Special circumstances exist when an inmate's failure to comply can be justified. Id. (citations omitted). Justification is found "by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." Giano v. Goord, 380 F.3d 670, 678 (2d Cir. 2004) (citations omitted).

In this case, McWilliams has failed to satisfy the exhaustion requirements for claims contained in his amended complaint. DOCCS records do not show any grievances which were filed and appealed regarding the use of force incident on February 18, 2012, the tampering of medical records surrounding the February 18, 2012 incident, denied medical care surrounding the February 18 or April 22, 2012 incidents, claims of retaliation against Lipka or Marshall, claims of deliberate indifference against Bilow or Williams, the issuance of false misbehavior reports as retaliation by Bilow, Carr, Ellsworth, Lipka, Marshall, Simmons, or Williams, deliberate indifference claims against Fischer and Rock, or violations of due process rights against Uhler. Dkt. No. 99-25. The record contains a CORC appeal surrounding the denial of medical care on November 8, 2011; however, that appeal

concerns a "Nurse M," not Nurse Travers. Dkt. Nos. 51 at 13 (CORC appeal), 99-25 at 1 (CORC computer print out); see also supra note 5. Additionally, during McWilliams's deposition on November 6, 2013, he testified that he had filed a grievance in connection to the April 22, 2012 use of force incident within the prior two months. However, McWilliams fails to include a copy of the complaint, grievance, or subsequent appeals. Furthermore, the filing of such a grievance would not meet exhaustion requirements as it came after the filing of this instant federal action on May 4, 2012. Dkt. No. 1. Thus, McWilliams's claims are insufficient to defeat the computer print outs generated by the grievance program.

McWilliams has failed to meet any of the Hemphill factors. First, McWilliams conceded that administrative remedies were available to him. In fact, the CORC computer print outs show that McWilliams has filed and appealed a plethora of grievances in the past at Upstate. Second, defendants preserved the exhaustion defense in their answers to McWilliams's complaint. Dkt. Nos. 79 ¶ 22, 88 ¶ 21, 92 ¶ 21; see McGee v. West, No. 10-CV-0238 (MAD/GHL), 2012 WL 716273, at *3 (N.D.N.Y. Jan. 4, 2012) (Dkt. No. 99-12) (finding defendants had preserved the exhaustion affirmative defense in their motion to dismiss). Further, McWilliams does not allege, and the record does not reflect otherwise, that defendants had acted to inhibit McWilliams's attempt to exhaust his administrative remedies.

Lastly, McWilliams has not alleged any special circumstances justifying his failure to comply with the administrative procedural requirements. In his amended complaint, McWilliams indicated that he did not file a grievance related to the allegations contained in the complaint because he has "a constitutional right under Nussle v. Willete [sic] which requires no grievance exhaustion upon assault or retaliation." Am. Compl. at 6.

20

McWilliams testified to the same during his deposition. The Second Circuit held in <u>Nussle</u> that "exhaustion of administrative remedies is not required for claims of assault or excessive force brought under § 1983." <u>Nussle v. Willette</u>, 224 F.3d 95, 106 (2d Cir. 2000). However, in 2002, the Supreme Court overturned <u>Nussle</u> and held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrongs." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). Further, despite McWilliams's mistaken understanding of the law, the CORC computer print outs show that McWilliams had previously appealed grievances concerning alleged retaliatory conduct prior to commencement of this action. Dkt. No. 99-25. Thus, it is clear to the Court that outdated Circuit law did not lead McWilliams to fail to grieve in the normally required way. <u>Giano</u>, 380 F.3d at 678.

Accordingly, defendants' motion on this ground should be granted and McWilliams's complaint should be dismissed for his failure to exhaust.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 99) be **GRANTED** as to all claims against all defendants and McWilliams's amended complaint (Dkt. No. 57) be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN**

**FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** <u>Roldan v. Racette</u>, 984 F.2d

85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  May 14, 2014
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge